Curia, per Harper, Ch.
The principal ground relied upon in this case is either, that the Act of 1841 does not apply to the case, or, that the Act itself is invalid. I do not find the ground for the former opinion. The Act declares, in general terms, that every bequest directing slaves tobe carried out of the State, with a view to their emancipation, shall be void. This, in plain and explicit terms, applies to every bequest, whether made before the passing of the Act, or to be made subsequently. It is mentioned by Blackstone as a rule of construction, that it shall be intended by the courts that an Act of the Legislature was intended to operate prospectively and not retrospectively. But if *44 an Act of the British Parliament be plainly intended to have a retrospective effect, there is no limit to its authority, and it must be carried into execution. We shall presently inquire how far the Act of Assembly of 1841, can be regarded as retrospective.
I know of no ground on which an Act of the Legislature can be declared void, but that it is in opposition to some provision of the constitution. I do not know to what provisions of the constitution the Act of 1841 can be regarded as opposed, but that no ex post facto law shall be passed, or law impairing the obligation oí contracts. There is no question of contract. The provision, that no freeman shall be disseised of his rights, <fec., but by the judgment of his peers or the law of the land, is plainly inapplicable. An ex post facto law and a law having a retrospective effect, are very commonly regarded as identical- An ex post facto law has been construed to mean a law declaring that to be a criminal offence, and subjecting the perpetrator to punishment, which was no legal offence when the act was committed. But suppose the meaning to be extended further, and to include every thing that can be understood by a retrospective Act; that not only no criminal responsibility shall be incurred, but no civil liability by way of damages, forfeiture, <fec., by an act which was not unlawful at the time, or which the party had no means of knowing to be unlawful. This is the rule of justice ; which it was intended to preserve, both by the constitution and the rule of construction. But what injustice has been done to this petitioner by the Act in question ? If the executor had actually sent the slaves out of the State, and the. Legislature had then passed an Act declaring that he should be liable for their value, this would have been a retrospective Act, or might have been called an Act ex post facto. But there can- be no doubt but that the negroes were still slaves : the act of emancipation was to be in future, and the Act of the Legislature has intervened to forbid that future action. How then can it be regarded as retrospective, any more than if the testator himself had expressed an intention of liberating his slaves, and before his execution of that intention, an Act of the Legislature had forbidden it? The executor only stands in the place of the testator.
But is it said that an injury is done to the slaves themselves; that they had a vested right to freedom ; and that the Act was retrospective, or ex post facto, with respect to them? Certainly, in a legal point of view, they remained the slaves of the executor. Jt is true that they were so upon a trust; but the law de *45 clares them to be mere chattels. They had no status in court, and could not have come into court to enforce the execution of the trust. In the case of Frazier vs. Frazier, the court decided that it would not interfere to prevent the execution of such a trust, when there was no law to forbid it. But here is a law to forbid it. This case is certainly in point with that of Lenoir vs. Sylvester. In both cases, the' testator directed his slaves to be emancipated on a future event: in both cases, the law intervened to prohibit it, before they were actually emancipated. Certainly, it does not appear that a sufficient sum has been raised, by the hiring of the slaves, to pay off the testator’s debts, and to defray the expenses of their transportation to another state, or to Liberia. This was the event, on which they were to be manumitted. But this we do not consider as essential to the determination of the case. It is enough, that they were not actually manumitted, before the Act of the Legislature was passed. This applies equally to the slaves, Simpson and Harriet, mentioned in the petition, as to any of the others.
It has been so often decided, that a mere exclusion of the heir at law or next of kin, without a valid disposition of the property, will not exclude them, that it is hardly necessary to consider the other principal ground of the petition. Such was the decision in the case of Hall vs. Hall, 2 Mc. C. Ch. 269. It was contended, that when the next of kin were excluded, the other nearest relations should take as though the former were naturally dead. But this is not a case of the exclusion of the next of kin, but of all kindred and relations whatsoever; and we believe that it has never been contended, or suggested, that a will, merely providing that no kindred or relations shall take any part of the testator’s property, is such a disposition in favor of the State, as that the property will escheat.
It is ordered, that the petition be dismissed.
Dunkin and Jqhintstqn, CC, concurred.